# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**James Detiege and Amy A. Detiege,**<br><br>      **Debtors.** | **Bankruptcy Case No. 19-40051-JMM** |
| **Maria Josefa Vilma Rosauer,**<br><br>      **Plaintiff,**<br><br>**vs.**<br><br>**James Detiege and Amy A. Detiege,**<br><br>      **Defendants.** | **Adv. Proceeding No. 19-08029-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

  Stephen A. Meikle, Idaho Falls, Idaho, Attorney for Plaintiff.

  Aaron J. Tolson, Ammon, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION − 1

### *Introduction*

Maria Josefa Vilma Rosauer ("Plaintiff") commenced this adversary proceeding on May 2, 2019. Dkt. No. 1.[1] Amy and James Detiege (collectively, "Defendants") filed an answer on May 17, 2019. Dkt. No. 6. The trial was held on January 21, 2020, and the parties submitted written closing arguments. Dkt. Nos. 39, 40,[2] and 44. The Court subsequently deemed the matter under advisement. Having now considered the record, applicable law, and arguments of the parties, the Court makes the following findings of fact and conclusions of law. Rules 7052; 9014.

### *Findings of Fact*

Plaintiff is James' mother and Amy's mother-in-law.[3] Before 2017, Plaintiff and her late husband, Joe, resided in their home in Iowa and Defendants resided in Idaho. Joe's health began deteriorating and Defendants visited Plaintiff in Iowa. During that visit, Plaintiff, Joe, and Defendants discussed the possibility that Plaintiff and Joe would sell their Iowa home and move to Idaho to live with Defendants. Plaintiff and Joe moved

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] Defendants' post-trial brief was submitted after the deadline for post-trial briefs set by this Court. *See* Dkt. No. 37. While the Court does not condone Defendants' tardiness, Plaintiff sought approval to extend her deadline to reply to Defendants' belated brief, which this Court granted. Dkt. No. 42. Plaintiff, accordingly, had sufficient opportunity to reply to Defendants' untimely post-trial brief. Dkt. No. 44. Therefore, despite Defendants' lack of punctuality, the Court will nonetheless consider Defendants' closing post-trial argument.

[3] Because this case involves members of the same family, several parties have the same last name. When necessary for clarity, the Court will use first names. No disrespect is intended.

MEMORANDUM OF DECISION – 2

to Idaho in September 2016 to be closer to family; unfortunately, Joe passed away in November 2016.

After Joe's passing, the discussions about buying a home together continued. Plaintiff and Defendants (collectively, the "Parties) came to an understanding that Plaintiff would use the proceeds from the sale of her Iowa home to purchase a home in which the Parties would reside together. Plaintiff and Defendants shared their plan with multiple family members, including Plaintiff's brothers and her other son. Plaintiff, Plaintiff's brothers, and her other son all described a similar understanding. The plan was that Plaintiff would provide the down payment for the purchase of the Idaho home, and she would reside in the home along with Defendants who would help take care of her. Such an arrangement was something of a tradition in the family, as Plaintiff and Joe helped take care of Plaintiff's mother in their home during Plaintiff's mother's final year, and Plaintiff's mother had a similar arrangement with her mother.

The Parties went to Idaho Central Credit Union ("ICCU") to inquire about obtaining a mortgage with which to purchase a home. Plaintiff could not qualify for the mortgage on her own, and ICCU told James that he may be able to qualify if his credit was better. Plaintiff then advanced $12,000 to help pay off some of Defendants' debt to aid in their credit recovery. Eventually, with Defendants' combined income and improved credit history, along with the sale proceeds from Plaintiff's Iowa home, they qualified for a mortgage without having to list Plaintiff as a borrower on the loan.

MEMORANDUM OF DECISION − 3

In 2017, the Parties found a home in Idaho that they wished to purchase (the "Home"). The Home is located at 157 North 3300 East, Rigby, Idaho 83442. In order to purchase the Home, ICCU required Plaintiff to sign a "Gift Letter" which states that the money being provided by her as a down payment for the Home was a gift to Defendants. After Plaintiff expressed reservations about such an arrangement, James told Plaintiff not to worry, that he would not "screw" her over, and that she would have a home in which she could reside for the rest of her life. Reluctantly, Plaintiff signed the Gift Letter. Amy was asked what her understanding was for the purpose of the Gift Letter and she responded, "Uh, she was giving us the money so that we could get a house that she could live with—stay there with us." Title to the Home was in Defendants' names only. James told Plaintiff that her name could only be put on the title after they had owned the Home for two years because of the type of loan Defendants obtained.

Plaintiff transferred $80,000 to Defendants to be used for the down payment of the Home. Defendants, without Plaintiff's knowledge, paid off a vehicle owned by Amy before putting the remainder down as a down payment on the Home. In total, Plaintiff transferred $92,000 to Defendants to either aid in Defendants' credit recovery so that they could qualify to purchase the home or as a down payment on the Home itself. The deal closed and the Parties moved into the Home.

It was not long before the relationship began to deteriorate, however. Plaintiff testified that she was restricted in her use of the Home. For example, she was not allowed to use the sections of the Home that the Parties had earlier agreed she could access.

MEMORANDUM OF DECISION – 4

Plaintiff was also not allowed to have friends over, could not use the internet or the laundry room, could not eat at the dining room table, and could not park her vehicle close to the Home. Defendants also moved more people into the Home than what the Parties had originally agreed to, including Defendants' son and daughter-in-law, as well as Defendant's daughter and their daughter's girlfriend.

Defendants' testimony, predictably, paints a different picture. Defendants contend that Plaintiff had multiple men over at the Home, some of whom were walking around naked or scantily clothed in front of Defendants' children. Defendants also testified that Plaintiff became increasingly hostile towards Defendants and their children. James further testified that it was Plaintiff who complained that others were parking in her parking spot, so he made Plaintiff her very own parking spot in which no one else was allowed to park.

The relationship continued to deteriorate and, eventually, Defendants posted an eviction notice on Plaintiff's bedroom door. When that proved unsuccessful, Defendants changed the locks on the Home while Plaintiff was away and, upon her return, Plaintiff could not enter or otherwise access her personal belongings.

James, when first asked about the disposition of Plaintiff's personal belongings, stated that he had only sold a wheelchair because Plaintiff had asked him to do so. In subsequent testimony, when asked if the items were still in storage, James responded that, as far as he was aware, the belongings were still in storage, but he could not be sure because he had sold the belongings to Susan Schaat, Amy's mother. James sold the

MEMORANDUM OF DECISION – 5

personal belongings for five-hundred dollars and Ms. Schaat moved those belongings to a storage unit. Although the Court heard testimony from James and Amy that they could not afford to store the personal belongings any longer, Ms. Schaat testified that she took the personal belongings, which she knew belonged to Plaintiff, because James and Amy wanted the belongings out of the Home. Plaintiff did not consent to selling any of the items.

When asked if all of the items were still in storage, Ms. Schaat said that "most everything" was still there. Defendants did not advertise the items for sale, did not contact an auctioneer to place the items for sale, and took no bids on the items. The five-hundred dollars that Ms. Schaat paid Defendants included two-hundred dollars for moving the items with a U-Haul truck and three-hundred dollars for the items themselves. As of the day of the trial, Plaintiff was still not living in the Home and did not have her personal belongings.

Defendants filed their chapter 7 petition on January 23, 2019, listing Plaintiff as a creditor with a debt of $92,000. Plaintiff commenced this adversary proceeding on May 2, 2019.

### *Arguments*

In her complaint, Plaintiff seeks the imposition of a constructive trust on the Home for her benefit. Second, Plaintiff argues that Defendant wrongfully converted Plaintiff's personal belongings and thus she is entitled to turnover of the property or its value. Third, Plaintiff argues that the debt owed to her arising from the conversion is nondischargeable

MEMORANDUM OF DECISION – 6

pursuant to § 523(a)(2)(A).[4] Finally, Plaintiff seeks an award of attorney's fees and costs. In response, Defendants argue that there is nothing owed to Plaintiff whatsoever, that the money Plaintiff provided was merely a gift for James' help while Joe was still alive that would allow Defendants to purchase a house where Plaintiff could visit her grandchildren, and Plaintiff has failed to meet her burden that she is entitled to a declaration that any debt owed to her is nondischargeable. Further, Defendants argue that a constructive trust would be inappropriate under the facts of this situation, and that all Plaintiff's personal property has already been turned over to Plaintiff, effectively rendering Plaintiff's conversion claim moot, an assertion Plaintiff disputes.

### *Conclusions of Law and Disposition*

I.    <u>Constructive Trust</u>

Plaintiff argues that this Court should impose a constructive trust on the Home for her benefit.[5] Defendants counter that the Idaho statute of frauds prevents this Court from

---

[4] While not pled in her Complaint, Plaintiff's post-trial brief argues that the debt owed to her is nondischargeable pursuant to §523(a)(6). Not only was this claim not pled in the Complaint, it was not indicated as a cause of action in Plaintiff's Adversary Cover Sheet. Dkt. Nos. 1 and 3. The § 523(a)(6) claim was first raised in Plaintiff's post-trial brief. Plaintiff has not moved to amend the pleadings under Civil Rule 15(b), incorporated and made applicable in this adversary proceeding pursuant to Rule 7015. Plaintiff makes no argument that the § 523(a)(6) claim was tried by implied consent pursuant to Civil Rule 15(b)(2). Moreover, the Court entered a pre-trial order on December 10, 2019, Dkt. No. 18, that established deadlines for the Parties to amend the pleadings. Under Civil Rule 16(d), incorporated and made applicable in this adversary proceeding pursuant to Rule 7016, that pretrial order "controls the course of the action unless the court modifies it." This Court has not extended the deadline to amend the pleadings in any subsequent order, which deadline has consequently long since passed. The Court concludes that the issue has not been properly presented and will not consider this claim.

[5] In the Complaint, Plaintiff's prayer for relief asks this Court for a judgment against Defendants for $92,000, or, in the alternative, a constructive trust.

MEMORANDUM OF DECISION – 7

imposing a constructive trust under these circumstances, arguing that the agreement, if one did exist, must be in writing to be effective. *See* Idaho Code § 9-503 (requiring transfers of interests in real property to be evidenced by writing). Defendants further argue that the Gift Letter is dispositive that Plaintiff intended the money to be a gift to Defendants and she was to receive nothing in return.

As a threshold matter, the Court will address Defendants' statute of frauds argument. Defendants' assertion that Idaho's statute of frauds prevents this Court from imposing a constructive trust is incorrect. Defendants cite two specific provisions of the Idaho statute of frauds in support of their argument: Idaho Code §§ 9-505(1) and 9-505(4).

Idaho Code § 9-505(1) provides that "An agreement that by its terms is not to be performed within a year from the making thereof" must be in writing. The Honorable Jim D. Pappas, of the United States Bankruptcy Court for the District of Idaho, has previously addressed this Idaho statute:

> This provision applies to contracts whose performance cannot possibly be completed within one year. Further, a contract which is capable of being performed and might have been fully performed and terminated within a year does not fall within the Statute. This is true regardless of how the parties actually performed under the contract. Stated another way, the Idaho statute of frauds does not render an agreement invalid so long as there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.

MEMORANDUM OF DECISION – 8

*In re Lacey*, No. BR 12-41656-JDP, 2014 WL 585438, at *2 (Bankr. D. Idaho Feb. 13, 2014) (cleaned up).[6] The alleged agreement between the Parties included a provision whereby Plaintiff could reside in the Home, and be taken care of, for the rest of her life. At the time of any such agreement, there was no guarantee that Plaintiff would live longer than one year. Accordingly, there was a possibility that full performance of the agreement between the Parties could be completed within one year, however remote that possibility might have been. This provision of the Idaho statute of frauds, therefore, is inapplicable here.

Plaintiff also argues that Idaho Code § 9-505(4) prevents this Court from imposing a constructive trust on the Home because the agreement was not in writing. Idaho Code § 9-505(4) provides that "An agreement for the leasing, for a longer period than one (1) year, or for the sale, of real property, or of an interest therein . . . is invalid" unless the agreement is in writing. Although Idaho Code § 9-503 is somewhat duplicative of Idaho Code § 9-505(4), it is more specific. Entitled "Transfers of real property to be in writing," Idaho Code § 9-503 prescribes the requirement that transfers of real property be in writing, providing:

---

[6] Use of the "(cleaned up)" parenthetical in this Decision indicates that the Court has removed extraneous, non-substantive clutter (such as brackets, quotation marks, ellipses, footnote signals, and internal citations) and may have also altered capitalization without indicating such changes in brackets. Any alterations are used solely to enhance readability without altering the substance of the quotation. *See, e.g.*, J. Metzler, *Cleaning Up Quotations*, 18 J. APP. PRAC. & PROCESS 143, 154 (2017) (*see also Brownback v. King*, 141 S. Ct. 740, 748, 209 L. Ed. 2d 33 (2021); *Mendez v. Moonridge Neighborhood Ass'n, Inc.*, No. 1:19-CV-00507-DCN, 2021 WL 276694, at *2 (D. Idaho Jan. 26, 2021)).

> No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

Idaho Code 9-503. Idaho Code § 9-504 provides additional guidance:

> [Idaho Code § 9-503] must not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, *nor to prevent any trust from arising or being extinguished by implication or operation of law,* nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof.

Idaho Code § 9-504 (emphasis added). A constructive trust is a trust that arises by operation of law. *See e.g., Snider v. Arnold*, 153 Idaho 641, 643, 289 P.3d 43, 45 (2012). Moreover, the Idaho Supreme Court has imposed constructive trusts in cases involving real property without respect to whether the agreement was in writing. *See Id.* at 645, 289 P.3d at 47. Defendants' argument that the lack of a writing evidencing the agreement forecloses any possibility that this Court could impose a constructive trust is, therefore, unavailing.

Next, Defendants argue that the Gift Letter renders Plaintiff's constructive trust argument null because it is indicative of Plaintiff's intent to give Defendants the down payment for the purchase of the Home for nothing in return. First, the Court has serious doubts whether the transfer by Plaintiff of the funds for the down payment qualifies as a "gift" even in light of the Gift Letter. Under Idaho law, a "gift" is "a voluntary transfer of property by one to another without consideration or compensation therefor." *Stanger v.*

MEMORANDUM OF DECISION − 10

*Stanger*, 98 Idaho 725, 728, 571 P.2d 1126, 1129 (1977) (quoting *Wood v. Harris*, 201

Okla. 201, 203 P.2d 710, 712 (1949)). Plaintiff testified that she provided the down

payment so that Defendants could qualify for the loan that was to be used to purchase the

Home and that, in exchange, she would have a place to live. James testified that Plaintiff

provided the funds so that Defendants could purchase the Home and Plaintiff would have

a place to stay when she would visit the grandchildren. Although the Court finds

Plaintiff's version more credible, under either scenario, Plaintiff received consideration in

return for providing the down payment: either a place to live or a place to stay when she

visited the grandchildren.[7]

Notwithstanding the likelihood that Plaintiff received consideration in return for

providing the down payment, even if the Court had found otherwise, there is another

basis to conclude the down payment was not an outright gift: the lack of donative intent.[8]

The Idaho Supreme Court has prescribed the conditions precedent required to effectuate a

gift:

> To effectuate a gift, a donor must deliver property to a donee, or to
> someone on his or her behalf, with a manifested intent to make a gift of the
> property. Delivery is accomplished when the grantor relinquishes all

---

[7] Having either a place to live or a place to stay constitutes valid consideration. *See Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 526, 272 P.3d 491, 498 (2012) ("Consideration 'must have some value in the eyes of the law; but in the absence of fraud or overreaching, the promisor, if competent, can fix on anything not in itself unlawful as a consideration and put his own value on it, and whether it is equivalent' to the benefit bargained for is a matter left to the determination of the parties.") (quoting *McMahon v. Auger*, 83 Idaho 27, 38–39, 357 P.2d 374, 380 (1960) (quoting 94 C.J.S. Wills § 113(1))). Moreover, receiving something in return for providing the down payment indicates a lack of Plaintiff's donative intent.

[8] Moreover, the consideration that Plaintiff received is also an indicator that she lacked donative intent.

MEMORANDUM OF DECISION – 11

present and future dominion over the property. Donative intent may be proven by direct evidence, including statements of donative intent, or inferences drawn from the surrounding circumstances, such as the relationship between the donor and donee.

*Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 126, 206 P.3d 481, 490 (2009) (cleaned up). While the Gift Letter is indicative of donative intent, it is not dispositive on the issue. Although Plaintiff signed the Gift Letter, which indicated she was giving the money to Defendants for the down payment of the Home, there is ample contradicting evidence that the down payment was not an outright gift to Defendants. Instead, the evidence is clear that the only way to fund the loan to purchase the Home was with the down payment Plaintiff provided. Multiple independent witnesses corroborated Plaintiff's version of events that the Parties agreed to move in together and be equal co-owners of a house. Michael Detiege explained to the Court that he did not believe that his mother, Plaintiff, would ever provide such a large sum of money to anyone, including her own children, without something in return. Plaintiff had just recently relocated from Iowa to Idaho and lost her husband, and was planning to live with Defendants until she died so that they could help take care of her. James himself testified that he had, at one point, told Plaintiff that she could live with him until she died. After Plaintiff had paid down Defendants' debts and agreed to provide the down payment for the Home, the only obstacle remaining was ICCU's request that Plaintiff sign the Gift Letter. Moreover, the fact that ICCU required Plaintiff to sign the Gift Letter negates in whole, or at least in part, the presence of donative intent. In other words, Plaintiff's "gift" was a requirement to fund the loan rather than an act of generosity.

MEMORANDUM OF DECISION – 12

Gifts are not presumed, even in familial relationships, and the burden of establishing that a transfer of property was a gift lies with the beneficiary, or in this case, Defendants. *Claunch v. Whyte*, 73 Idaho 243, 248, 249 P.2d 915, 917 (1952). Multiple witnesses corroborate Plaintiff's explanation regarding the down payment of the Home and the agreement that all Parties would share ownership. Defendants have not met their burden here and, accordingly, the Gift Letter alone does not preclude the Court from imposing a constructive trust on the Home.

The Court next turns to the merits of Plaintiff's constructive trust argument. This Court must consult state law to determine whether the imposition of a constructive trust is appropriate. *JP Morgan Chase Bank, N.A., v. Cougar Crest Lodge, LLC (In re Weddle)*, No. 05-21089 TLM, 2006 WL 3692425, at *5 (Bankr. D. Idaho Dec. 12, 2006) (citing *Custer v. Dobbs (In re Dobbs)*, 115 B.R. 258, 269, 90 I.B.C.R. 179, 194 (Bankr. D. Idaho 1990)). Even if state law would recognize the right to a constructive trust, however, state law and the imposition of that constructive trust must be consistent with the Code. *Id.* (citing *Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.1985)).

The imposition of a constructive trust must be proved by clear and convincing evidence. *State v. Coats*, 165 Idaho 323, 327, 444 P.3d 895, 899 (2019). Clear and convincing evidence is "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (Idaho 2006) (quoting Black's Law Dictionary 577 (7th ed. 1999)). A

MEMORANDUM OF DECISION − 13

constructive trust is an equitable remedy used to prevent an injustice. *JP Morgan Chase Bank, N.A., v. Cougar Crest Lodge, LLC (In re Weddle)*, 2006 WL 3692425, at \*5 (citing *Dobbs*, 115 B.R. at 269, 90 I.B.C.R. at 194). Bankruptcy courts should impose constructive trusts cautiously, as the Ninth Circuit "generally takes a dim view" of such claims. *Farmers Ins. Group v. Krommenhoek (In re Hiatt)*, 00.3 I.B.C.R. 131, 133 n. 9 (Bankr. D. Idaho 2000) (citing *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172 B.R. 638, 641–42 (9th Cir. BAP 1994)).

Intent to create a trust is not a requirement for the imposition of a constructive trust. *Snider v. Arnold*, 153 Idaho at 643–44, 289 P.3d at 45–46. Rather, it is the legal title holder's wrongful actions which give rise to a constructive trust. *Id*. at 644, 289 P.3d at 46; *see also Davenport v. Burke*, 30 Idaho 599, 608, 167 P. 481 (1917) ("Constructive trusts are raised by equity for the purpose of working out right and justice, where there is no intention of the party to create such a relation, and often directly contrary to the intention of the one holding legal title.").

A constructive trust is an appropriate remedy where it would be "unconscionable for the holder of legal title to retain the benefits of the property." *Dobbs*, 115 B.R. at 269, 90 I.B.C.R. at 194. In Idaho, "a constructive trust arises where legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in property." *Hettinga v. Sybrandy*, 126

MEMORANDUM OF DECISION − 14

Idaho 467, 470, 886 P.2d 772, 775 (Idaho 1994) (quoting *Witt v. Jones*, 111 Idaho 165, 168, 722 P.2d 474, 477 (1986)).

The Court, as explained below with respect to the § 523(a)(2)(A) claim, finds that there was no fraud, no misrepresentations, and no concealment by the Defendants. Under Idaho law, however, there are other reasons to impose a constructive trust, such as taking advantage of one's necessities, unconscionability, or under the doctrine of unjust enrichment.

The Idaho Supreme Court has held that "a constructive trust arises when one who holds title to property is subject to an equitable duty to convey the property to another in order to prevent unjust enrichment." *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho 395, 401, 336 P.3d 802, 808 (2014) (quoting *Andre v. Morrow*, 106 Idaho 455, 461, 680 P.2d 1355, 1361 (1984)).

"Unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." *Vanderford Co. v. Knudson*, 144 Idaho 547, 557, 165 P.3d 261, 271 (2007) (citing *Beco Constr. Co. v. Bannock Paving Co.*, 118 Idaho 463, 466, 797 P.2d 863, 866 (1990)). In order to prove a prima facie case for unjust enrichment, Plaintiff must demonstrate: (1) Plaintiff conferred a benefit upon Defendants; (2) appreciation by Defendants of such benefit; and (3) Defendants accepted the benefit under circumstances that would be inequitable for Defendants to retain the benefit without compensating Plaintiff for the value thereof. *Id*. at 558, 165 P.3d at 272.

MEMORANDUM OF DECISION − 15

The Court has no trouble concluding that the first and second elements of unjust enrichment are satisfied. "A person confers a benefit upon another if he or she gives the other some interest in money, land, or possessions, performs services beneficial to or at the request of the other, satisfies the debt of the other, or in any other way adds to the other's advantage." *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho at 398, 336 P.3d at 805 (quoting 42 C.J.S. Implied Contracts § 9 (2013)). Plaintiff has undoubtedly conferred a benefit upon Defendants that Defendants appreciated. It was the down payment that allowed Defendants to purchase the Home, and by paying down Defendants' debts, Defendants were able to qualify for the loan that was used to purchase the Home.

The last element of unjust enrichment, that Defendants accepted the benefit under circumstances that would be inequitable for Defendant to retain the benefit without compensating the Plaintiff for the value thereof, overlaps considerably with other reasons recognized by Idaho courts to justify the imposition of a constructive trust. Those reasons include taking advantage of one's necessities, or that the conferral of the benefit occurred under circumstances which render it unconscionable for the holder of legal title to retain a beneficial interest exclusive of Plaintiff's interest.

Although there is conflicting testimony concerning the Parties' intent with respect to the ownership of the Home, the Court finds Plaintiff's testimony to be more credible. Defendants now argue that they never told Plaintiff that she could live with them forever, but there is ample evidence to the contrary. In considering Plaintiff's § 523(a)(2)(A)

MEMORANDUM OF DECISION – 16

cause of action below, the Court determined that those representations had been made and, at the time they were made, were not false nor made with fraudulent intent. In fact, James himself testified that he promised Plaintiff a place to live. He traveled to Iowa to aid Plaintiff in moving all of her belongings to Idaho and even moved all of those belongings into his home while the parties looked for a house together. Even though James and Amy testified that Plaintiff had given the money for the down payment of the Home for Defendants to purchase so that Plaintiff would have a place to stay when she came to visit Defendants' children, nevertheless, the facts belie that testimony. Almost immediately after the purchase, Plaintiff moved into the Home with all of her personal belongings and began paying two-hundred dollars per month for utilities and paying for satellite television service for the Home. She also purchased substantial items for the Home such as a couch, washer, dryer, and refrigerator, for which, according to James, Plaintiff sought no obligations or services in return. Finally, not only did Plaintiff move in immediately after the purchase, but she remained there for about three years before the relationship soured. Defendants' narrative, put bluntly, is nonsensical and self-serving.

Moreover, circumstances exist which would render it unconscionable for the Defendants to retain a beneficial interest in the Home exclusive of Plaintiff's interest. First, Defendants would not have been able to qualify for a home loan without Plaintiff paying down some of their debt. Similarly, Plaintiff provided a large sum of money to allow for the purchase of the Home. In other words, without Plaintiff's contributions, Defendants would not own and be living in the Home. Next, the Parties represented to

MEMORANDUM OF DECISION – 17

multiple witnesses that their intent was to own the Home as co-owners where Plaintiff could have a place to live and be cared for. Moreover, the only way the bank would fund the loan was if Plaintiff signed the Gift Letter, which she did despite having personal reservations about it. Plaintiff is a widow and, because she provided the large cash sum as a down payment for the Home, she is now without a way to purchase a home of her own. Furthermore, Plaintiff relocated from Iowa to Idaho to be closer to family who could care for her, two of whom are named Defendants in this adversary proceeding. That family was to take care of Plaintiff after Joe's passing, and in fact told Plaintiff that they would do so. Finally, given Plaintiff's age, her fixed income and lack of her spouse's support, and the fact that this family has a tradition wherein a younger family member cares for an older family member in the older member's later years, it was not unreasonable for Plaintiff to rely on Defendants' representations and promises to care for her. Plaintiff provided Defendants with a large cash sum under the presumption that she would have a place to live and be cared for, and Defendants capitalized.

Because the Court has found that Plaintiff conferred a benefit upon Defendants which they accepted and enjoyed, and because these circumstances render it unconscionable for the Defendants to retain a beneficial interest in the Home exclusive of Plaintiff's interest, the Court concludes that Plaintiff's claim for a constructive trust will be granted. The constructive trust will be imposed upon the funds transferred from Plaintiff to Defendants. Because Plaintiff transferred funds to Defendants in order to pay down their debts, improve their credit, and thereby qualify for a loan to purchase the

MEMORANDUM OF DECISION – 18

Home, as well as funds for the down payment on the purchase, the constructive trust will be imposed upon the full amount transferred from Plaintiff to Defendants, totaling $92,000.

The constructive trust will be represented by a lien on the Home in favor of Plaintiff. Defendants shall have 18 0 days from the date of this decision to satisfy the lien and remit the $92,000 to Plaintiff. If they fail to do so, Plaintiff may enforce payment by whatever means are available, including foreclosure.

II.    <u>Conversion of Personal Property</u>

Plaintiff argues that Defendants wrongfully gained dominion over her personal property that remained inside the Home after Defendants changed the locks and would not let her reenter. Defendants, in their post-trial brief, argue that this claim is moot because all personal property that was in their control has been turned over to Plaintiff. Plaintiff disputes this assertion.

Conversion is the act of wrongfully asserting dominion over another's personal property in denial of or inconsistent with the owner's rights therein. *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho at 401, 336 P.3d at 808 (citing *Carpenter v. Turrell*, 148 Idaho 645, 650, 227 P.3d 575, 580 (2010)).

Plaintiff must prove three elements to prevail on her conversion claim: (1) that Defendants wrongfully gained dominion of her property; (2) that the property was owned or possessed by Plaintiff at the time Defendants gained dominion; and (3) the property in

MEMORANDUM OF DECISION − 19

question is personal property. *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010).

The last two elements are not in dispute. Defendants acknowledge that the personal property that was in their possession belonged to Plaintiff, and even acknowledged that they sold some of that property to Amy's mother for five-hundred dollars. There is also no dispute that the property is personal property.[9]

Whether for lack of a cognizable counterargument, or perhaps just their counsel's apathy, Defendants did not address this claim in their pre-trial brief, did not dispute the composition or the value of the property, and in their post-trial brief, simply declared the claim to be moot because Amy's mother had purportedly relinquished any right to the personal property. Such an approach is, at best, fallacious and, at bottom, careless.

The facts demonstrate that, after an altercation between Plaintiff and Defendants at the Home, Plaintiff left the Home to spend a few days away from Defendants to allow the situation to deescalate. While she was away, Defendants changed the locks on the Home and would not let her reenter, even though her personal belongings remained inside.

Although the Court heard conflicting testimony about the disposition of the belongings, it is clear the belongings were either sold to Susan Schaat and then moved to a storage unit, or moved to a storage unit and then sold to Ms. Schaat. Regardless of the

---

[9] "Personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho at 400, 336 P.3d at 807 (quoting BLACK'S LAW DICTIONARY 1337 (9th ed. 2009)). All items identified here are movable items that are not classified as real property.

MEMORANDUM OF DECISION – 20

order of events, there is no dispute that Defendants locked Plaintiff out of the Home and then sold her personal belongings without her consent. While Defendants argue that this claim is moot because Ms. Schaat has relinquished any right to the items, her testimony contradicts this assertion. Ms. Schaat testified that "most" of the items were still in the storage unit and she believed she was the rightful owner. On this record, the Court finds Defendants wrongfully gained dominion of Plaintiff's personal property. Accordingly, the elements of conversion have been proven, and contrary to Defendants' argument otherwise, the claim is not moot.

This conclusion does not end the Court's inquiry, however. Defendants' closing argument does not address which items were sold and which items were given back to Plaintiff. Simply put, the Court is left to rely upon Plaintiff's testimony, which this Court finds credible and is largely undisputed. Although Plaintiff provided an extensive list of personal property items in one of her memorandums,[10] she did not provide the value of every item. More importantly, listing the items in a memorandum constitutes argument rather than evidence. The Court, accordingly, will take into consideration only the

_____

[10] Plaintiff's Complaint lists the following personal property: A shop smith and incorporated power tools, large tool boxes, numerous tools, collector's dolls, a Canon camera, pets, washer and dryer, a Samsung fridge, a minifridge, a chest freezer, a grandfather clock, storage cabinets/shelving, a treadmill, a cardio workout machine, an 8-foot-long white table, a wooden hutch, a dining room set (a table and 8 chairs), a matching curio cabinet, sewing machines, a desktop computer, an Apple computer, a Dell laptop, a Vitamix, a pressure cooker, a dresser, a couch, beds, an end table, large pans and other kitchen items, a Formula 4 racecar, a trailer, and a wheelchair. Although Plaintiff testified concerning her purchase of a four-wheeler, she testified that James "borrowed" $1,000 to purchase the four-wheeler. Accordingly, it is not apparent to the Court who exactly owns the four-wheeler or whether Plaintiff simply provided a loan for the purchase that James paid back. The four-wheeler, thus, is not included in the Court's calculations.

MEMORANDUM OF DECISION – 21

personal property, and its corresponding value, for which evidence was presented at the

hearing. Here is a breakdown of the personal property for which the Court heard

testimony:

| Item | Value |
|------|-------|
| Refrigerator | $3,000 |
| Washer and Dryer Set | $1,500 |
| Dining Room Set | $5,000 |
| Shop Smith and other various tools | $10,000[11] |
| Three Computers | $3,800 |
| Television | $400 |
| CPAP Machine | $600 |
| Leg Pumps | $300 |
| Lawn Mower | $800 |
| **Total** | **$25,400** |

The Idaho Supreme Court has explained the proper measure of damages in a

conversion action:

> The proper measure of damages for wrongful taking or detention of
> personalty is the reasonable value of its use during the detention period.
> Further, an owner who retakes converted property may recover damages
> based on value at the time of conversion, but in mitigation, the wrongdoer
> is entitled to credit for value of property when returned, though he is
> charged with value of its use for the period of wrongful detention.

*Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 742, 979 P.2d 605, 615 (1999)

(internal citations removed). Additionally, "a plaintiff who is injured by actionable

conduct of a defendant is ordinarily denied recovery for damages which could have been

avoided by reasonable acts, including reasonable expenditures, after actionable conduct

_____

[11] Plaintiff stated that the value of the tools was "over" $10,000 but did not provide an exact value.

MEMORANDUM OF DECISION − 22

has taken place." *Id*. at 743, 979 P.2d at 616 (citing *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 261, 846 P.2d 904, 912 (1993)). In other words, in a conversion action, the measure of damages is the value of the property at the time of conversion plus the value of its use during the period of wrongful detention. If the property is returned, however, the damages are reduced by the reasonable value of the property at the time the property is returned plus damages which could have been avoided by reasonable acts of Plaintiff. As a mathematical expression, the formula appears as such:

(Value of the property at the time of the conversion +
Value of the use of the property during the period of wrongful detention)
-
(Reasonable value of the property at the time the property is returned +
Damages that could have been avoided by reasonable acts of Plaintiff)
_____
Damages to which Plaintiff is entitled

The only evidence of the value of the property came from Plaintiff's testimony. Defendants offered no evidence concerning value or which items were returned. Further, Defendants claim that they sold the property because they could no longer afford to store it. Although Defendants were potentially entitled to reimbursement or credit for storing the items on Plaintiff's behalf after they made a demand on her to retrieve the items, Defendants did not provide the date that they made such a demand, nor when the items were moved to storage, when the items were sold to Ms. Schaat, or how much they paid in storage costs. More to the point, Defendants, inexplicably, did not seek any such credit. Ms. Schaat testified that she bought the property from Defendants because Defendants wanted the property out of the Home. It is not clear, therefore, whether

MEMORANDUM OF DECISION – 23

Defendants did in fact pay to store the items for Plaintiff before Ms. Schaat bought the items, or whether Ms. Schaat bought the items and then moved them to storage herself.

Plaintiff did not provide evidence that she lost any value of the use of the personal property while the items were under Defendants' dominion. Although Defendants argue that Ms. Schaat has relinquished any ownership right to the personal property, they did so in their post-trial brief. Again, this is not evidence and, at the trial, Defendants failed to show that any of the items had been turned back over to Plaintiff. In fact, Ms. Schaat testified that she believed she was the rightful owner of the property.

Finally, there was also no evidence that any of the property had been returned following trial. Accordingly, the Court has no basis upon which to credit Defendants for items returned to Plaintiff.

The Court concludes that Defendants wrongfully gained dominion over Plaintiff's personal property. The Court rejects Defendants' assertions that the claim is moot and, because none of the property had been returned to Plaintiff before trial, Defendants will be liable for the full value of the property at the time of conversion. Plaintiff's conversion claim, accordingly, will be granted in the amount of $25,400.

As discussed below, however, Plaintiff has not met her burden to prove that her debt is nondischargeable under § 523(a)(2)(A), and there are no other portions of § 523 properly at issue. Under these circumstances, the Court will decline to enter a judgment for the conversion amount at this time. The burden will rest on Plaintiff and her counsel to designate a pathway, if one exists, for the Court to award this sum in a way that will

MEMORANDUM OF DECISION − 24

either not be subject to discharge in Defendants' bankruptcy case, or collection of which will not violate the discharge injunction. Plaintiff will have twenty-eight days from the entry of this decision to plead this additional relief. If nothing is filed or the additional requested relief is denied, the Court will enter a judgment for the conversion amount with the notation that it is subject to the discharge entered in Defendants' bankruptcy case on June 21, 2019. *In re Detiege,* 19-40051-JMM at Docket No. 19.

III.    Section 523(a)(2)(A)

Plaintiff seeks a determination that the debt owed to her by Defendants is nondischargeable pursuant to § 523(a)(2)(A), which provides that an individual is not discharged from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. Section 523(a)(2)(A) is not to be read more broadly than necessary to effectuate policy, such as preventing debtors from avoiding debts incurred by fraud or other culpable conduct, and, should be construed strictly against creditors and in favor of debtors. *Fetty v. DL Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 854 (Bankr. D. Idaho 2010) (citing *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 5–6 (9th Cir. BAP 2008)).

A plaintiff asserting nondischargeability of a debt under § 523(a)(2)(A) must demonstrate the following elements by a preponderance of the evidence:

> (1) Defendants made representations to Plaintiff; (2) that at the time they knew were false; (3) that they were made with the intent to deceive

MEMORANDUM OF DECISION − 25

Plaintiff; (4) that Plaintiff justifiably relied on such representations; and (5) that the Plaintiff sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Lin v. Hunt (In re Hunt)*, No. AP 20-06015-JDP, 2020 WL 6821784, at *3 (Bankr. D. Idaho Nov. 10, 2020) (citing *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) and *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). The Court will address each element in turn.

    *1.    Defendant made representations to Plaintiff*

Plaintiff does not clearly pinpoint the statements Defendants made which she relied upon to her detriment. In fact, it is not clear to the Court whether Amy made any such statements. Some statements were made at the time the Parties were discussing purchasing a house together, including representations by James to Plaintiff that all three Parties' names would be on the deed to the Home and that Plaintiff would have a house to live in for the rest of her life. Several statements were made around the time Plaintiff signed the Gift Letter. At that time, James told his mother not to worry because he would not "screw her over." He also told Plaintiff that she would reside in the Home for the rest of her life, and that Plaintiff would be part owner of the Home. Additionally, James also told Plaintiff that they would eventually add her name to the deed as well.

Plaintiff also asserts that James told family members around March 2017 that Plaintiff and Defendants would buy the house together, that Plaintiff would be able to reside in the Home for the rest of her life, that Defendants would take care of her for the rest of her life, and that the Parties would be co-owners of the Home. The testimony of

MEMORANDUM OF DECISION – 26

family members corroborates Plaintiff's assertion. Thus, the Court finds Defendants made representations to Plaintiff.

2.      *At the time of the representations, Defendants knew them to be false*

Plaintiff must prove that Defendants knew the representations described above were false at the time they were made. Much of the evidence put on at trial, including the evidence proffered by Plaintiff, cuts against her argument. Sometime around 2015, James visited Iowa to assist Plaintiff and her late husband with some home repairs. It was at this time the Parties began discussing the possibility of all living together. After selling their Iowa home and moving to Idaho, Plaintiff's husband, Joe, unfortunately passed away in November 2016. Approximately a year later, Plaintiff and Defendants found the Home in which they would reside together. The funds used to purchase the Home appear to have been disbursed on or around December 21, 2017. Ex. 203.

Defendants testified that they never made representations to Plaintiff that she could reside in the Home for the rest of her life. Dkt. No. 40. The Court finds this testimony to not be credible. Plaintiff's brother, Robert Getz, testified that James told him in March 2017 that Plaintiff and Defendants were going to purchase a house that Plaintiff would live in for the rest of her life. James told Robert that he did not have any money for the down payment for a house and that Plaintiff would retain the equity in the house on account of her providing the down payment.

MEMORANDUM OF DECISION − 27

Al Getz, Plaintiff's other brother, also heard James and Plaintiff in March 2017 talking about buying a house together and living together. Both Plaintiff and James informed Al that they were looking for a house that all three would own together.

Michael Detiege, Plaintiff's son and James' younger brother, testified that Plaintiff and Defendant had informed him via telephone that they planned on buying a house together where Plaintiff and Defendants would reside. He also testified that he did not believe that there was any way his mother, Plaintiff, would provide such a large cash sum without expecting something large in return, i.e. having a house in which to reside. Furthermore, this arrangement is precisely the type of arrangement that Plaintiff and her husband had with Plaintiff's mother, and the Parties' expectation was that this arrangement would be carried on by the next generation.

This testimony provided by Plaintiff and her family members, including her two brothers and her other son, however, does not support her argument that, *at the time the statements were made*, Defendant knew them to be false. This testimony, rather, tends to support the contrary position, that at the time the statements were made, Defendants intended to live in the Home with Plaintiff. The only evidence offered by Plaintiff that supports this element is testimony from Michael Detiege that he, now looking back at the conversations he had with Plaintiff and James when the Parties were considering purchasing a house together, does not think that James ever intended to reside with Plaintiff or care for her the rest of her life. Other than that, any evidence that the Parties' relationship had soured to the point of making living together unworkable came up after

MEMORANDUM OF DECISION – 28

the Parties' had already moved into the Home. Accordingly, because Plaintiff has not

established this element by a preponderance of the evidence, her § 523(a)(2)(A) claim

must, consequentially, be denied.

### 3.   *Defendants intended to deceive Plaintiff*

The third element of a § 523(a)(2)(A) claim requires proof that Defendants

intended to deceive Plaintiff. Although Plaintiff must establish all elements to prevail on

her § 523(a)(2)(A) claim and has failed to satisfy the second element as noted above, the

Court will nonetheless address this element as well. Intent to deceive is a question of fact

that may be inferred from circumstantial evidence. *Welch v. Laraway (In re Laraway)*,

No. 09-01831-TLM, 2010 WL 3703272, at *7 (Bankr. D. Idaho Sept. 13, 2010) (citing

*Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir.1997)). Because direct

evidence of intent to deceive is rarely available, such intent may be inferred from the

totality of the circumstances and through circumstantial evidence. *Lin v. Hunt (In re

Hunt)*, 2020 WL 6821784, at *3; *see also Fetty v. DL Carlson Enters., Inc. (In re

Carlson)*, 426 B.R. at 855. A promise made with a positive intent not to perform or

without a present intent to perform satisfies § 523(a)(2)(A). *Fetty v. DL Carlson Enters.,

Inc. (In re Carlson)*, 426 B.R. at 854.

Again, the only evidence here that supports this element is Michael Detiege's

testimony that he now questions whether James ever intended to live with Plaintiff and

care for her for the rest of her life. Before moving into the Home, however, Plaintiff and

Defendants told several family members that they intended to buy a house and reside

MEMORANDUM OF DECISION – 29

there together. Further, the discussion to buy a house and reside together first came up when Plaintiff's husband was still alive. The arrangement worked out by the Parties is not unusual but, rather, is a multi-generational tradition in the family. James even openly disclosed to family members that the Parties' would be relying on Plaintiff's down payment to purchase a house. Other than Michael's belated concerns about James' intentions prior to purchasing and moving into the Home, the evidence does not indicate Defendants intended to deceive the Plaintiff with their representations. James' representations at or around the time of signing the Gift Letter, that he would not "screw" Plaintiff over, and that they would live in and own the Home together, are congruent with the earlier statements made to family members by both Plaintiff and Defendants. The evidence, quite simply, does not support the establishment of this element.

Having concluded that Plaintiff has failed to establish, by a preponderance of the evidence, multiple elements under § 523(a)(2)(A), the Court will not further address any remaining elements, and Plaintiff's § 523(a)(2)(A) claim will be denied.

IV.   <u>Attorney Fees and Costs</u>

Plaintiff argues that she is entitled to attorney fees incurred in pursuing her claims. Typically, attorney fees are not recoverable in federal courts unless provided for by contract or by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S. Ct. 1612, 44 L.Ed.2d 141 (1975). Furthermore, there is no general right to recover attorney fees under the Code. *Reynard v. Karass, et al (In re Saito Bros Inc.)*, 560 B.R. 540, 549 (Bankr. D. Idaho 2016) (citing *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d

MEMORANDUM OF DECISION − 30

439, 441 (9th Cir. 1997)). Bankruptcy courts must look to whether the case involves state or federal claims and whether the applicable law allows such fees. *Id.* "[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id*. (quoting *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d at 441). It is against this backdrop that the Court turns to the Idaho rules and statutes Plaintiff cites in support of her award for attorney fees. Specifically, Plaintiff argues she is entitled to an award of attorney fees pursuant to Idaho Rule of Civil Procedure 54(e) and Idaho Code §§ 12-120(3) and 12-121.

While Idaho Rule of Civil Procedure 54(e) informs this Court's decision to award attorneys' fees and sets forth important factors for this Court to consider, the Court must look to the statutory scheme to determine whether Plaintiff is entitled to attorney fees in this action.[12] *See* Idaho Rule of Civil Procedure 54(e)(1) ("In any civil action the court may award reasonable attorney fees, including paralegal fees, to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for *by any statute* or contract.").[13]

---

[12] Idaho Rules of Civil Procedure 54(e) provides:

> [A]ttorney fees under Idaho Code Section 12-121 may be awarded by the court only when it finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation, which finding must be in writing and include the basis and reasons for the award.

Idaho Rule of Civil Procedure 54(e)(2). The rule contains the same language as Idaho Code § 12-121, which Plaintiff also cites in support of her position.

[13] Here, there is no contract providing for attorney fees, so the Court must turn to the applicable statutes.

MEMORANDUM OF DECISION − 31

Idaho Code § 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

Idaho Code § 12-120(3).

It is not apparent to the Court how this provision would apply to this case, and Plaintiff makes no argument in support thereof.[14] Therefore, attorney fees under this provision will be denied.

Idaho Code § 12-121 provides:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. This section shall not alter, repeal or amend any statute that otherwise provides for the award of attorney's fees.

Idaho Code § 12-121.

In other words, to grant Plaintiff's request for attorney fees, this Court must find that Defendants defended the case frivolously, unreasonably, or without foundation. This Court has discretion to make this determination. *Jackson Lunber, Inc. v. Heath (In re Heath)*, No. ADV. 09-8077-JDP, 2011 WL 2566506, at *5 (Bankr. D. Idaho Mar. 28,

---

[14] In this case, the Court made no findings with respect to an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services. Furthermore, this case does not involve any commercial transaction. *See* Idaho Code § 12-120(3) ("The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes.").

MEMORANDUM OF DECISION – 32

2011). To do so, this Court must look at the entire course of litigation. Put another way, this Court may not try to determine whether defending a single claim within a case was frivolous or without foundation; Idaho Rule of Civil Procedure 54(e)(2) specifically provides that attorney fees may be awarded pursuant Idaho Code 12-121 only when the court "finds that *the case* was brought, pursued or defended frivolously, unreasonably or without foundation." *See also Jackson Lunber, Inc. v. Heath (In re Heath)*, 2011 WL 2566506, at *fn. 5.

Defendants opposed all of Plaintiff's claims for relief in the adversary proceeding, and successfully defeated one of them. Examining the totality of the litigation, the Court finds the defense of this case was not frivolous, unreasonable, or unfounded, and Plaintiff's request for attorneys' fees under Idaho Code § 12-121 will be denied.

### *Conclusion*

Plaintiff's claim for a constructive trust will be granted, and a constructive trust will be imposed on funds transferred from Plaintiff to Defendants in the amount of $92,000 as a lien against the Home. As specified above, the lien must be paid within 180 days from the date of this decision, after which Plaintiff may resort to available methods of collection, including foreclosure. While the Court found that Defendants wrongfully converted Plaintiff's personal property, Plaintiff, however, has failed to establish any judgment debt for conversion would be nondischargeable under § 523(a)(2)(A). If Plaintiff has a method by which the Court may order Defendants to pay the conversion sum without violating the discharge injunction, she may file the necessary motion within

MEMORANDUM OF DECISION – 33

twenty-eight days of this decision. Finally, Plaintiff's request for attorney fees will be denied.

The Court directs Plaintiff to submit a proposed order reflecting the conclusions reached in this decision for entry by the Court.



DATED:  June 24, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 34